## MAURICE J. CHASE
### V.
## JOHN NELSON, ADMINISTRATOR.

*Negligence—Action to Recover Damages for Death Alleged to Have Been Caused by Malpractice—Instructions—Construction of Statute— Burden of Proof.*

1.  In an action to recover for death alleged to have been caused by the malpractice of the defendant, a physician, an instruction which authorized a recovery by the plaintiff, in case the jury found that the negligence of defendant *contributed* to the death of plaintiff's intestate, was erroneous. Under the statute of this State, to justify a recovery in such case, the negligence of defendant must have been the direct cause of death.

2.  Under the pleadings and evidence in this case the burden of proof was on the plaintiff all the way through, and an instruction that in a certain contingency the burden might be shifted to the defendant was error.

3.  It is the duty of a trial court to see that all of its instructions are correct and harmonious, and not to trust to good ones to cure bad ones.

[Opinion filed December 11, 1890.]

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. J. J. & G. TUNNICLIFF and J. A. McKENZIE, for appellant.

Messrs. FORREST F. COOKE and A. M. BROWN, for appellee.

C. B. SMITH, P. J.   This was an action on the case brought by appellee, administrator of the estate of B. J. Nelson, against appellant, Chase, to recover damages for alleged malpractice by appellant in treating B. J. Nelson in such negligent and unskillful manner, that B. J. Nelson died as the result of such unskillful treatment.

The case was tried upon the following amended count in the declaration, viz.:

"And whereas, the defendant, before and at the time of the committing of the grievances hereinafter mentioned, was

exercising the profession of a physician, and the said Bror Nelson, deceased, while the defendant was so exercising such profession, there retained and employed the defendant as such physician for reward, to attend to and treat him for the cure of a certain sickness under which he was then and there suffering. And thereupon the defendant as such physician, accepted such retainer and employment and entered upon the treatment of the said Bror Nelson in pursuance thereof, and continued to treat the said Nelson a long space of time, to wit, thirty days next following. And the plaintiff avers that the disease with which the said Nelson was suffering, and for which the defendant was called to treat, and which the defendant undertook to cure, required, as stated to said Nelson, that his urine should be drawn away by mechanical means, the said Nelson at that time being unable to pass his urine in the ordinary manner, and this being his sole and only trouble, for which the defendant was called to treat, and the plaintiff avers that the defendant in his attempt to cure the said Nelson of said trouble, introduced into the urethra of the said Nelson, and so on into the opening of his bladder, one hollow tube called a catheter, for the purpose of drawing away the urine so detained in the bladder of the said Nelson. And the plaintiff avers that the defendant while performing the said operation, either because of the defective character of the catheter used, or on account of the unskillful manner of its use by the said defendant, broke said catheter within the urethra of the said Nelson, so that when said catheter was attempted to be withdrawn from the urethra of the said Nelson, a large portion of said rubber tube and catheter was left within the urethra; and the plaintiff avers that on account of the danger incident to the presence of any foreign substance within the passages of the body, and its great liability to produce inflammation of the parts and so result fatally, it became and was the duty of the defendant to have immediately removed said broken piece of catheter from the urethra of said Nelson, and so saved the said Nelson from the sufferings and complications of diseases which followed. But the

defendant, wholly unmindful of his duty in the premises, refused and neglected to remove said broken catheter; indeed, claimed that it was unnecessary; that it would dissolve shortly and come away without trouble to or danger to the said Nelson, and so the defendant, although the said catheter, by the exercise of ordinary skill and care, could have been easily taken away, allowed the same to remain in the urethra, where it was a source of constant annoyance and pain to the said Nelson, until finally said broken catheter worked itself through and into the bladder, where it was allowed to remain by the defendant, until inflammation and thickening of the bladder took place, and so great was the disease of the bladder, caused wholly by the presence of said catheter within the bladder, on account of the defendant's neglect and want of ordinary care and skill in not removing the same, that he, the said Bror Nelson, on the 11th of September, died; and the plaintiff avers that the death of the said Bror Nelson was caused by reason of the unskillful conduct of the defendant aforesaid; and the plaintiff avers that the said Bror Nelson left surviving him one Charlotte Nelson, his widow, and minor children, his next of kin, who are still living, and by reason of the death of said Nelson, said widow is deprived of her means of support, and said children of their means of support and education, to the damage of the plaintiff, as administrator, of $5,000, and therefore he brings suit. And the plaintiff brings into court his letter of administration, granted by the County Court of the county aforesaid.

Cooke &amp; Brown, Attorneys."

Plea of not guilty by defendant filed November 23, 1889. A trial was had at the March term, 1890, before a jury, resulting in a verdict for the plaintiff for $2,250. The court overruled a motion for a new trial and gave judgment on the verdict. Appellant now brings the record here on appeal and assigns numerous errors on the record. The chief errors relied upon however are, that the verdict is against the evidence, and that the court erred in giving instructions for the plaintiff, and refusing instructions for the defendant. In the

view we take of the case it will only be necessary for us to consider the assignment of errors, relating to the instructions. Inasmuch as the judgment must be reversed for erroneous instructions, we shall express no opinion as to the weight or value of the evidence on either side, except to say that the statements in the plaintiff's declaration as to the nature of B. J. Nelson's affection, and as to the use made of the catheter, and the fact of its having been broken off in the body of said Nelson, as alleged, while in the hands of appellant, seem to be supported by the evidence, and, as we understand the proof, upon these averments in the declaration there is no substantial controversy, except that the defendant insists that Nelson was laboring under other serious and dangerous maladies at the time he was called, besides the retention of his urine.

The only real controversy was as to whether appellant used reasonable and ordinary skill as a physician and surgeon in the care and use of his catheter, and in leaving the broken catheter in the urethra of B. J. Nelson, after it was broken off. Upon these controverted points there was a great deal of testimony taken on both sides, upon the weight of which we express no opinion. It is sufficient for our purpose to say that the evidence submitted tended to prove the respective theories of both plaintiff and defendant, and therefore called for correct and accurate instructions from the court.

The first instruction given for the plaintiff contained among other things this clause, viz.:

" If, therefore, the jury believe from the evidence in this case that the defendant undertook the treatment of B. J. Nelson for a fee, and that in treating him a catheter was broken in his urethra, and by reason of the want of the exercise of ordinary care and skill the broken part of said catheter was allowed to remain in the urethra and finally to pass into the bladder of B. J. Nelson, and that disease was thereby created that caused or contributed to the death of B. J. Nelson, then your verdict must be for the plaintiff in such an amount as you believe the plaintiff has from all the evidence sustained, not exceeding $5,000."

This part of the instruction was erroneous and should have

been stricken out, or the whole of it refused. This action is based upon the statute, Chap. 70, Sec. 1, and but for the statute could not be maintained. Under the common law no ·such right of action existed. The statute being in derogation of the common law should have a reasonably strict construction. Its benefits should not be extended to causes not fairly within its language or fairly inferable from its language. Thompson v. Weller, 85 Ill. 197. The statute under which this action is commenced provides that "whenever the death of a person is *caused* by the wrongful act, neglect or default of another," then such person who so *caused* the death shall be liable, etc. Now, the plain and manifest meaning of this statute is that " the wrongful act, neglect, or default" must be the direct cause of the death, and must also be such an act as would likely produce death, and death thereby be the consequence, sooner or later, of the wrongful act. The instruction under consideration informed the jury that if the negligence of appellant, Chase, caused or *contributed* to the death of Nelson, then they must find the defendant guilty. Under this instruction, no matter how remotely the negligent act of defendant may have contributed to hasten the death of Nelson, still he would be liable notwithstanding; the jury may have been satisfied that the disease under which Nelson was suffering when defendant was called to treat him, would or must result fatally to him. This instruction interpolated a very important word in the statute, which the Legislature did not see fit to put in it. For that reason this first instruction was wrong.

The third instruction given for the plaintiff is as follows:

" 3. The court instructs the jury, that if at the time Dr. Wilson entered upon the treatment of B. J. Nelson on the 7th day of September, 1888, that he, Nelson, was suffering from inflammation of the urethra, bladder and prostate gland, together with other diseases, and that such troubles were caused by the lack of the exercise of ordinary care and skill on the part of the defendant, and that his condition was such that death must take place in a short time unless medical relief was given him, then it is incumbent upon the defend-

ant to show by a preponderance of the evidence that the death of B. J. Nelson resulted from other causes that were not the result of any conditions present at the time defendant ceased to treat him, and Dr. Wilson assumed charge of the case."

This instruction is open to two objections at least. The first one is that it is obscure and blind in its meaning and lia-b'e to be misunderstood and mislead the jury. The proof is that when appellant was called to treat Nelson in the first instance, he at least had retention of the urine, which of itself was a very serious and dangerous disease. The evidence also tends to show that he was afflicted with other disorders, such as hernia and great enlargement of the prostate gland. The evidence on the part of the defendant tended strongly to prove that Nelson's health was in a very precarious condition if he was not in danger of an early demise. He was sixty years old. These disorders were upon him when appellant was called to treat him, and in his attempt to relieve him from the suffer-ing caused by the retention of the urine, the catheter was broken in the urethra. It is clear to us that while it is possi-ble that the breaking off of the catheter aggravated the suf-ferings of Nelson and may have hastened his death, still the proof is that Chase was not the author of his enlarged prostate gland nor of his hernia, nor of the retention of his urine. Yet the jury are told in this instruction that " the burden of proof is on appellant to show that the death of Nelson resulted from other causes that were not the result of any conditions present at the time the defendant came to treat him."

This instruction is clearly wrong. The burden was on the plaintiff, at every stage of the case, to show that Nelson's death was caused by the negligence of appellant. Appellant set up no affirmative, independent defense that cast the bur-den on him. He simply pleaded not guilty, and in his defense he showed the general condition of the health of Nelson and the various maladies with which he was suffering, and the manner of his treatment by himself, and others who followed him, as a part of the whole transaction. He had a right in his defense to show that even if his act was a negligent one, that

still the nature of Nelson's afflictions were of such a character that he would have died soon at all events; and although such showing might not constitute a complete bar to the action, it was still important in mitigation of damages. He had the right to show in bar of the action under the general issue that the operation performed upon Nelson by Dr. Wilson and others caused his death; but when he attempted to show this, he did not assume the burden of the proof upon that or any other question in the case. The burden was all the time on the appellee at all stages of the case. Under the evidence and theory upon which the case was tried, we see no place where the burden of the evidence would shift upon the defense, and the giving of that instruction was therefore erroneous. The fourth instruction for appellee is argumentative, and calls particular attention to some particular facts, to the exclusion of others equally important, and should not have been given.

The defendant asked the court to give the jury the following instruction:

9. "The jury must remember that the burden of proof is on the plaintiff to maintain all the material facts necessary to make out his case by a preponderance of the evidence. The presumptions of the law in absence of evidence to the contrary are that the defendant is not guilty, and unless by a preponderance of the testimony the jury are made to believe that the defendant is guilty as charged, then the verdict of the jury will be *not guilty.*"

But the court refused it because it was a duplicate of another given. We do not find any other instruction given for appellant that can be fairly claimed to be a duplicate of this one; and, inasmuch as it is a clear and correct statement of the law applicable to the case, it should have been given.

Counsel for appellee contend, when all the instructions on both sides are taken together, that the jury could not have been misled.

We think it very unsafe practice to expect juries to pick out and act on good instructions and reject erroneous ones, or even to expect the jury to harmonize a large mass of con-

flicting and adroitly drawn instructions. They are as likely to follow bad as good instructions. It is the bounden duty of the court to see that all its instructions are correct and harmonious, and not to trust to good ones to cure bad ones. Quinn v. Donovan, 85 Ill. 194; Dempsey v. Bowen, 25 Ill. App. 193. Every instruction should be a direct, short and clear statement of the law, and should be free from uncertainty and doubtful meaning.

For the errors above indicated the judgment will be reversed and remanded.

*Reversed and remanded.*