IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION

---

## NASHVILLE, DECEMBER TERM, 1917.

---

MAYOR AND CITY COUNCIL OF NASHVILLE v. W. G. REESE.

## (*Nashville.* December Term, 1917.)

1. **TRIAL.** Motion for peremptory instructions. Evidence.
In considering defendant's motion. for peremptory *instructions*, that view of the evidence most favorable to plaintiff's case must be taken by the court, and, if there is any doubt as to the conclusion to be drawn · from the whole evidence, the motion must be denied. (*Post, p. 479.*)

Cases cited and approved: Kinney v. Railroad, 116 Tenn., 451; Norman v. Railroad, 119 Tenn., 401; Walton v. Burchel, 121 Tenn., 715.

Cases cited and distinguished: Wagner v. Woolsey, Adm'x, 48 Tenn., 235; McCahill v. N. Y. Transportation Co., 201 N. Y., 221; Campbell v. Los Angeles Traction Co., 137 Cal., 565.

2. **DEATH.** Death by wrongful act. Proximate cause. Statute.
Where the driver of a wagon, one of whose wheels struck a hole in the street, was pitched out onto the street and sustained personal injuries giving him kidney trouble, which so weakened

138 Tenn.]                    (471)

his system that some months after he contracted idiopathic pneumonia and died therefrom, the case did not come within Shannon's Code, section 4025, providing that a right of action which a person whose death is caused by the wrongful act or omission of another would have had against the wrongdoer if death had not ensued shall not abate or be extinguished by his death, since the wrongful act of the city in leaving the hole in the street was not the proximate cause of the death. (*Post, pp.* 480-491.)

Code cited and construed:    Sec. 4025 (S.).

3. **DEATH. Proximate cause.**

Where a person has received an injury, and many months later dies of a germ disease in no wise connected with such injury, a cause of action does not arise against the wrongdoer on the theory that by reason of the injuries the victim's constitution became weakened and an easy prey for disease. (*Post, pp.* 480-491.)

4. **DEATH. Death by wrongful act. Proximate cause.**

The damages to be recovered under the wrongful death statute (Shannon's Code, section 4025), must be the natural and proximate consequences of the act complained of. (*Post, p.* 487.)

Cases cited and distinguished:    Daniels v. N. Y., N. H. & H. R. R. Co., 183 Mass., 393; Rettig v. Fifth Avenue Transportation Co., 6 Misc. Rep. 328.

Cases cited and approved:    Thompson v. Railroad Co., 91 Ala., 496; Santer v. Railroad Co., 66 N. Y., 50; Randall v. New Orleans, etc., R. R. Co., 45 La. Ann., 778.

5. **DEATH. Death by wrongful act. Contributing cause. Statute.**

Under Shannon's Code, section 4025, providing that a right of action which a person whose death is caused by the wrongful act or omission of another would have had against the wrongdoer shall not abate or be extinguished by his death, where the driver of a wagon was injured by being thrown to the street when one wheel dropped into a hole in the street, and his in-

Mayor & City Council v. Reese.

juries initiated kidney disease, which so weakened him that some months thereafter he contracted idiopathic pneumonia and died, his wife could not recover against the city on the ground that the injuries, by weakening his constitution, contributed to his death. (*Post, pp.* 480-491.)

Case cited and approved:   McDonald v. Nashville, 114 Tenn., 540

Case cited and distinguished:   Chase v. Nelson, 39 Ill. App., 53

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— THOS. MATTHEWS, Judge.

EWING & GARARD, for plaintiff in error.

W. H. WASHINGTON, for defendant in error.

MR. SPECIAL JUSTICE MALONE delivered the opinion of the Court.

On the 28th day of April, 1903, Alcy Reese was driving a wagon along Wharf avenue, in the city of Nashville, Tenn., when one of the wheels struck a hole in the street, and by the ensuing shock he was pitched out of the wagon on the street and sustained certain personal injuries. He brought no suit for these injuries in his lifetime. He died on December 26, 1903.

On January 22, 1904, the present suit was begun by his widow, Elizabeth Reese.

It appears that Elizabeth Reese died on January 30, 1905, and that no declaration was ever filed in her lifetime, but a revivor was entered of record on July 15, 1905, in the name of W. G. Reese, as her adminstrator.

On the same day that the suit was revived, to wit, July 15, 1905, the declaration in this cause was filed by the said W. G. Reese in his character of adminstrator. This declaration alleged the existence of a deep and dangereous hole in the street, the negligence of the defendant corporation in permitting the same to remain for a long time, the consequent fall of deceased from his wagon, etc.

After describing the injuries received by Alcy Reese, the declaration says: "Said injuries caused concussion of the spine and permanently impaired his constitution and general health and accelerated his death and made him an easy prey to disease, and, combined with the latter, brought about his death, several months afterwards."

To this declaration the defendant filed a plea of general issue.

After certain proceedings not material to the present discussion, the case thereafter came on to be tried, and an order was entered showing a mistrial, the jury failing to agree. The case was tried again some two years later, and a verdict was rendered in favor of plaintiff.

On this trial of the case the defendant, at the close of plaintiff's evidence, and again at the close of all of

the evidence, interposed a motion for peremptory instruction containing, among others, the following grounds:

"(3) There is no injury shown to have resulted from the injury as alleged.

"(4) There is a variation between the declaration and the proof, in that the deceased, Mr. Alcy Reese did not die or receive his death from the causes alleged.

"(5) That there is no cause of action in the present plaintiff; that if there is a cause of action it has been lost by the failure to revive within one year after the death of Mrs. Elizabeth Reese."

Thereafter the plaintiff in error made a motion for a new trial, assigning, among other errors, the grounds of no evidence to support the verdict and the action of the court in failing to peremptorily instruct the jury.

The motion for a new trial having been overruled, the case was appealed by the defendant city to the court of civil appeals, and an opinion was rendered by that court sustaining the motion for peremptory instructions and dismissing the case. The court of civil appeals took the view that, inasmuch as the suit had been brought by Mrs. Elizabeth Reese to recover damages on account of the negligent death of her husband, and she having died, the suit was not maintainable by her administrator under the statutes of this State with respect to death by wrongful action, etc.—that the right of action survived to the children of the deceased husband.

Taking this view of the case, the court of civil appeals did not find it necessary to discuss other questions arising upon the record.

A petition for *certiorari* and *supersedeas* was filed by W. G. Reese, administrator, the defendant in error, attacking the decision and opinion of the court of civil appeals. This *certiorari* has been heretofore granted, and the case has been fully and ably argued and brief-ed by counsel for the respective parties.

As will be perceived from the foregoing statement, the question for decision is, in general, whether the court of civil appeals was correct in sustaining the motion for peremptory instructions, and dismissing the suit.

Many questions have been discussed in the briefs and arguments of counsel. Much of this discussion relates to suvivorship under the statutes concerning death by wrongful act, and the possible effect of Acts of 1903, chapter 317, in a case like the present, where the wife has brought the suit for the wrongful killing of her husband, and afterward dies, pending the trial of the case.

Before these very interesting questions can properly be considered, another matter, suggested, but not passed upon, in the opinion of the court of civil appeals, must be determined; that is to say, whether the present case is one falling within the statutes relating to death by wrongful act; in other words, whether the deceased met his death by reason of the wrongful act or omission of the mayor and city council of Nashville.

Section 4025 of Shannon's Compilation provides: "A right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children or to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors."

It will be noted that the right of action under consideration arises where the person " . . . dies from injuries received - from another, or whose death is caused by the wrongful act, omission, or killing by another."

This feature of the act was before this court in the case of *Wagner* v. *Woolsey, Adm'x,* 1 Heisk., 235. In that case an action for wrongful killing under the statute (Acts 1851, chapter 17) was brought by the widow as administratrix of her deceased husband. The proof introduced tended to show that the deceased left his home, concealed himself for a considerable time in the mountains, was greatly exposed, and endured much suffering, in consequence of the efforts of parties with whom the defendant was shown to be connected.

The proof futher showed that the deceased enlisted as a federal soldier, and had, in connection with a party of such soldiers under orders, started through the Confederate lines into Kentucky; that he was captured by a confederate command with which the defend-

ant had nothing to do; that he was taken to prison, where he afterwards died. The court says 'that the acts of the defendant did not, in any legal sense, cause anything further to the deceased than his absenting himself from home, and his exposure and suffering as a consequence of such absence.

"That these acts caused his death, no man can affirm, we think, in any legitimate or legal sense, or that his death, under the circumstances of this case, in prison as a captured soldier, gave any cause of action for his death, upon any fair consideration of the statute, to his administrator or widow, or next of kin, we think, cannot be maintained, except by doing violence, not only to the plain language of the law, but to common sense and justice."

The court futher says: The rule of law is familiar, that seems to have been in many cases of this character entirely ignored, that damages to be recovered, must be the natural and proximate consequence of the act complained of. Mr. Greenleaf lays down in volume 11 of his work on Evidence, section 268, 'that, in proof of damages, both parties must be confined to the principal transaction complained of and to its attendant circumstances and natural results.' In view of these wellsettled principles, and the plain language of the Code, the verdict of the jury could not be sustained, even under the most liberal rule in favor of their finding on the facts."

We have heretofore quoted the language of the declaration in this case, which is, in substance, that the in-

juries permanently impaired the intestate's constitution and general health, and accelerated his death and made him an easy prey to disease, "and, combined with the latter, brought about his death, several months afterward."

Coming now to the facts, we find, on some points, a sharp conflict. Proof of several witnesses introduced by defendant tends to show that the intestate was not seriously injured by the fall; that he was only confined to his house for a few days after the accident, and then resumed and continued his usual work, until stricken with pneumonia several months afterward.

But, of course, in considering this motion for peremptory instructions, that view of the evidence which is most favorable to plaintiffs case must be taken by the court, and if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion for peremptory instructions must be denied. *Kinney* v. *Railroad,* 116 Tenn., 451, 92 S. W., 1116; *Norman* v. *Railroad,* 119 Tenn., 401, 104 S. W., 1088; *Walton* v. *Burchel,* 121 Tenn., 715, 121 S. W., 391, 130 Am. St. Rep., 788.

Looking, therefore, to plaintiff's proof, the evidence of various lay witnesses tended to show that the deceased, although a man of sixty-four or sixty-five years of age, was in excellent health at the time of the accident; that prior to the accident he never had kidney or bladder trouble of any kind, nor any trouble with his back; that by reason of the fall he received a severe contusion across the back over the region of the kidneys; that

from the time of the injury his kidneys and bladder seemed to be affected; that these pains in his back continued from the time of the injury until his death; that from the time of the injury he never was able to pursue his usual avocation; that he was confined to his bed or to his room during this period; that he continued to get worse and go down hill all the time; that, when stricken with pneumonia some ten days before his death, he was in a very weak condition and confined to his bed.

But all witnesses, lay and professional, agree in saying that he died, not from kidney or bladder trouble, but from the attack of pneumonia; and no witness is introduced who undertakes to say that the deceased received fatal injuries, or injuries which would have proved fatal, in and of themselves, by reason of the fall from the wagon. The uncontradicted proof is that he died from pneumonia, and that this pneumonia was not of traumatic origin, but due to the presence of the germ known as the "pneumococcus."

To sustain his case here, the counsel for petitioner relies especially upon the testimony of Dr. Frank Glenn, a practicing physician of long experience, who was examined as an expert. He was examined first on a hypothetical question as to the symptons of kidney trouble detailed by various witnesses, and says that in his opinion they might have resulted, and did result, from the injury received. He is then examined as to various anatomical details, and finally is asked:

''What causes might have caused death under the supposition I have given, taking the hypothetical case? A. Well, you mean including the knowledge that he had pneumonia?

''Q. Yes.  A. Well, I think this, that his system was so debilitated by this other trouble that he was a perfect field for any germ; and pneumonia, like. many other things, is a germ disease, and he was much more likely to attack than had he been a well man and could have resisted, and if the pneumonia was the direct cause of his death, the previous debility was what we term a predisposing cause.''

He also testifies: ''If you will allow me, I will make my answer a little more full to make it plain.  Under the germ theory it is discovered that the germ of diphtheria and of pneumonia is in ninety per cent. of the people in perfect health, and, the system being strong, there is no soil for it to operate in, and it does not hurt, but on another person with blood below the normal standard of existence they will take diseases while the same person's companion will have the germs in him and not take it at all.  Nature provides what we call antitoxin in the blood to resist disease; whether it is broken down health, or worry, or whatever it is that debilitates the system, make it below par, and make it an easy prey to any germ disease.

''Q. Now, take the case I have submitted to you, and suppose all these facts true; what would be your opinion as to what really caused the death of this man? A. You mean primarily?

"Q. Primarily and secondarily. A. He was in good physical condition before that; no trouble of any sort?

"Q. No, sir. A. I think indirectly the injury was the predisposing cause, and rendered his system a prey to any of the ordinary germs of disease. I think in all probability, if he had not had the injury, he would not have had the pneumonia and would not have died.

"Q. And that the debility resulting from the injuries, combined with the disease, caused his death? A. That is what I think."

It seems evident from the foregoing testimony, viewed in the most favorable light, that a grave doubt arises as to whether this case falls within the statutes concerning death by wrongful injury.

The theory advanced by the learned counsel for the plaintiff, as set forth in one of his briefs, is that whatever hastened or accelerated the death is, in law, the cause of the death.

To support this proposition he cites *McCahill* v. *N. Y. Transportation Co.*, 201 N. Y. 221, 94 N. E., 616, 49 L. A. R. (N. S.), 131, Ann. Cas., 1912A, 961, and *Campbell* v. *Los Angeles Traction Co.*, 137 Cal., 565, 70 Pac., 624, decided by the supreme court of California in 1902.

The first of these cases was decided by the court of appeals of New York in 1911. The holding of the case is succinctly stated in the headnote, as follows: "Where an injury precipitated an attack of *delirium tremens* resulting in death, it was the proximate cause of the death."

In that case the deceased was struck by a taxicab operated by the defendant, under circumstances which rendered the taxicab company guilty of neligence. As a result of the accident, the deceased was thrown some twenty feet, his thigh broken, and his knee injured. He immediately became unconscious, and was shortly thereafter taken to a hospital, where he died within two days from *delirium tremens*. One of the physicians testified that the patient when brought to the hospital " . . . was unconscious or irrational rather than unconscious; . . . he rapidly developed *delirium tremens*. . . . I should say with reasonable certainty the injury precipitated his attack of *delirium tremens*, and understand I mean precipitated, not induced."

Again he testified that in his opinion: " . . . . The injury to the leg and the knee hurried up the *delirium tremens*."

He also stated that: "He might have had it [*delirium tremens*] any way. Nobody can tell."

After setting out this evidence, HISCOCK, Judge, says: "Of course, it is undisputed that the injuries could not have led to *delirium tremens* except for the pre-existing alcholic condition of the intestate, and under the circumstances the debatable question in the case has been whether appellant's negilgence was, legally speaking, the proximate cause of intestate's death. It seems to me that it was, and that the judgment should be affirmed."

The court reviews a number of authorities, citing especially that line of criminal cases which holds a

homicide to be none the less criminal although the victim may have been suffering from a disease which would shortly have produced death.

The case of *Campbell v. Los Angeles Traction Co.*, 137 Cal., 565, 70 Pac., 624, was not a death case, being one in which the plaintiff was injured in a street car accident, and afterward brought suit, claiming an aggravation of the disease with which she was afflicted at the time of the accident.

Recovery was had by plaintiff, and on appeal the defendant assigned error upon the following instruction given to the jury by the court:

"If you find from the evidence that the plaintiff received the injury complained of by reason of defendant's negligence alleged in the complaint, and at the time of the reception of said injury the plaintiff was suffering from some disease, and you further find that said injury hastened the development of such disease, and that thereby, without the fault of plaintiff, her present condition, whatever you may find that to be, has resulted from such injury, then I instruct you that the plaintiff is entitled to recover such damages as you may determined she has sustained from the injury."

The supreme court of California held that there was no error in this instruction.

It seems evident that these cases do not control the case at bar. The man in the New York case was in such nervous condition by the previous use of alchohol that the breaking of his leg, and the other injuries received, precipitated an attack of *delirium tremens*.

The woman in the California case was suffering from a disease which was greatly aggravated by the shock received in the collision.

But in the present case all the proof shows that the deceased was a man in singularly good health at the time of the accident. And there is no thought or suggestion that he was suffering with pneumonia when he fell from the wagon, or that the pneumonia which actually caused his death was traumatic pneumonia. In fact, the undisputed proof is to the contrary.

Dr. Glenn, plaintiff's chief witness, speaking of the different types of pneumonia, says, on cross-examination:

"Q. Doctor, pneumonia is of two sorts, that is, it has two origins, what they call traumatic pneumonia, which is a tearing, and then there is the other pneumonia, what is the name of that. A. Well, just call it ordinary idiopathic pneumonia from the presence of the germ in the lung.

"Q. That means the pneumonia germ, or what is called the pneumonia bug? "A. Pneumococcus we call it.

"Q. That gets into the lungs and causes the disease? "A. Yes, sir.

"Q. That usually starts with a chill doesn't it? A. Yes; generally with a chill followed by a fever."

Looking at the whole evidence, and taking that view and drawing those inferences most favorable to plaintiff's case, we are unable to see that it falls within the statutes of this State regarding death by wrongful act.

Conceding, as must be conceded under such a view of the evidence, that the plaintiff received an injury to his bladder or kidneys, that he was immediately confined to his bed from which he never arose, that his health immediately began to fail, that his condition became more and more enfeebled, and that he was thereby rendered an easier victim of the pneumonia germ, we do not see how it can be said that the defendant's wrongful act was the natural and proximate cause of the intestate's death.    The undisputed proof shows that the decedent died of pneumonia, and there is no proof at all as to how he contracted this pneumonia, except that it was not of traumatic origin.    The undisputed proof shows that ''idiopathic'' pneumonia usually comes on with a chill.    For all that appears in this record, the deceased may have been exposed to such conditions as brought on a chill, and the ensuing attack of pneumonia, by his own negligence or the negligence of his attendants.

But, irrespective of this, we cannot assent to the proposition that, where a person has received an injury many months before, and afterwards dies of a germ disease, in no wise connected with such injury, a cause of action arises against the wrongdoer on the theory that by reason of such injuries the victim's constitution became weakened and thereby rendered him an easy prey to such disease.    If such were the law, it might well have been contended in the case of *Wagner* v. *Woolsey,* supra, that the enforced exposure to the weather brought about by defendant's wrongful act

weakened the constitution of the intestate so that he fell an easy victim to disease when subjected to the conditions of a war prison.

The cause of action in these cases is purely statutory, and we think, as stated in the case of *Wagner* v. *Woolsey,* supra, that the damages to be recovered must be the natural and proximate consequence of the act complained of, and that this familiar rule seems to have been ignored in many cases of this character.

As was aptly said by the supreme court of Massachusetts in discussing a case where the intestate, rendered insane by injuries received in a collision, had afterwards committed suicide:

"In the present case the question is: What is meant by the language of the statute in reference to a death that occurs a long time after the collision, from direct causes which come into existence and take form after the lapse of weeks or months, or possibly years, although they may be traced back to the collision as a first cause?" *Daniels* v. *N. Y., N. H., & H. R. R. Co.,* 183 Mass., 393, 67 N. E., 424, 62 L. R. A., 751.

While each case of this kind must stand upon its own facts, we have been referred to no authority which bears out the claim of plaintiff in the present case. Many cases are found in the books where injuries inflicted by a wrongdoer have hastened the death of the intestate, and a few cases have been found where there was a subsequent intervening agency. But in such cases the intervening agency merely hastened a death which would have occurred in any event as a

result of the injuries.   Thus in the case of *Thompson* v. *Railroad Co.,* 91 Ala., 496, 8 South., 406, 11 L. R. A., 146, the deceased had received severe injuries, and while under the care of his wife, about seven days afterwards, was given, by mistake, a dose of corrosive sublimate, a deadly poison, which the doctor had intended to be used in dressing his wound.   It was held that the defendant was nevertheless liable for the death of the deceased.   In that case, however, the supreme court of Alabama says:

"The testimony of skillful physicians tended to show that the injury inflicted was mortal, and the injured party would have died from the effect of the injury 'in a short time.' "

This fact plainly distinguishes that case from the case at bar, because nobody undertakes to say in the present case that the deceased received fatal injuries as a result of a fall from his wagon.   The testimony of both expert and nonexpert witnesses is that he died from an attack of pneumonia contracted about ten days before his death, and the utmost claim advanced is that by reason of his debilitated condition he fell an easy prey to the pneumonia germ.

So in the case of *Rettig* v. *Fifth Avenue Transportation Co.,* 6 Misc. Rep., 328, 26 N. Y. Supp., 896, the deceased was injured in August, all the witnesses agreeing that the injuries were serious, and was at once taken to a hospital where he died in the following January.   An operation was performed, which the defendant insisted was the cause of his death.   But the court,

after stating that there was no pretense of any mistake made on the part of the surgeon, adds that it has been decided that:

"   .  .  .   Where a person who, through the negligence of another, has received an injury which, without a surgical operation would cause his death, employs a competent and skillful surgeon, by whose mistake the operation is not successful, and the patient dies, the wrongdoer is not shielded from liability by the surgeon's error, and this although the operation is the immediate cause of the death"—citing *Sauter* v. *Railroad Co.*, 66 N. Y., 50, 23 Am. Rep., 18.

The case of *Randall* v. *New Orleans, etc., R. R. Co.*, 45 La. Ann., 778, 13 South., 166, on its face bears some resemblance to the present case. There the plaintiff's contention was that the deceased had been wrongfully expelled from the defendant company's train, at night, in freezing weather, at a station where he had to wait several hours before he could get a train returning home, and that in consequence of the cold and exposure he took a cold which ultimately caused his death. Expert testimony in the case showed that the deceased died of typhoid fever, a germ disease, and that the exposure could not have brought on this disease unless the deceased was afflicted with it when he commenced his journey. The supreme court of Louisiana allowed damages for the wrongful expulsion only, holding that this tortious act was not the proximate cause of the intestate's death.

Nor do we think that the plaintiff's case can be saved on the theory that the injuries, by weakening the constitution of the intestate, contributed to his death.

The case of *Chase* v. *Nelson,* 39 Ill. App., 53, was one arising under the statute of that state providing that: " . . . Whenever the death of a person is caused by the wrongful act, neglect, or default of another, . . . " then such person who caused the death shall be liable, etc.

In commenting upon an instruction given by the trial judge, the court says: "Now, the plain and manifest meaning of this statute is that 'the wrongful act, neglect, or default,' must be the direct cause of the death, and must also be such an act as would likely produce death, and death thereby be the consequence, sooner or later, of the wrongful act. The instruction under consideration informed the jury that, if the negligence of appellant Chase caused or contributed to the death of Nelson, then they must find the defendant guilty. . . . This instruction interpolated a very important word in the statute, which the legislature did not see fit to put in it."

The instruction therefore was held to be erroneous.

It results from the conclusions above expressed that the trial court should have sustained the defendant's motion for peremptory instructions.

The case is not one of death by wrongful act, within the meaning of our statutes, and therefore the widow had no right to bring it originally, nor was there any cause of action in the widow's administrator after her

death.   *McDonald* v. *Nashville,* 114 Tenn., 540, 86 S.
W. 317.

The court of civil appeals reached the correct result
in disposing of this case, and the judgment of that
court is affirmed.