### WATERS v. DAVIS.

(Circuit Court of Appeals, Sixth Circuit.    May 5, 1906.)

#### No. 1,495.

1. TRIAL—PROVINCE OF JURY—CREDIBILITY OF WITNESS.

The credibility of a witness is for the jury to determine, and if he has given substantial testimony bearing on the issue, to which the jury might in the proper exercise of its function give credit, it is error for the court to direct a verdict in opposition to it, on the ground that the witness is unworthy of belief.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 334, 335, 376–380.]

2. BANKRUPTCY—ACTION BY TRUSTEE TO RECOVER MONEY OF BANKRUPT—PROOF OF OWNERSHIP.

Where money was placed in the hands of defendant on the order of a bankrupt, who is shown to have controlled its possession and disposition, the jury, in an action for its recovery by his trustee, may infer his ownership from the circumstances of the transaction, although there is no positive testimony that he was the owner.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

W. H. Martin, S. A. Wilkinson, and Hiram W. Currey, for plaintiff in error.

G. J. McSpadden and L. T. M. Canada, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit brought by the trustee in bankruptcy of one Robert Boatright to recover from the defendant, Ralph Davis, the sum of $15,000, alleged to have been the property of Boatright, and to have been delivered to Davis after Boatright's property passed to the trustee.

After the introduction of the evidence offered by the plaintiff, the court directed a verdict for the defendant on the ground that the principal witness for the plaintiff, one Lockman, was not worthy of belief, and that there was no testimony to show that Boatright was the owner of the money in dispute. We are of the opinion that in so doing, the court exercised a function reserved for the jury. There was substantial evidence tending to show that Boatright was the owner of the money, and that it was turned over to Davis, a Memphis lawyer, by his direction, and that Davis, with the exception of a few

hundred dollars, has never accounted for it and still holds it. The testimony tended to show that Boatright, one Williams, and five others, constituted a gang who operated "fake" foot races in Missouri, Arkansas, and other states. They were finally arrested and lodged in jail. Boatright and Williams were released on bond. Boatright fled to Memphis, and Williams remained in Hot Springs. Suits were brought against Boatright, and others, by persons who had been defrauded. In the meantime, Williams arranged with Lockman, who kept a saloon and restaurant in Hot Springs, to take possession of $14,500 in money which was to be handed him by one Hendricks, who had been acting as stakeholder for the gang. Lockman took the money and kept it in his house. Lockman at this time was feeding the members of the gang who were in jail, and Boatright and Williams were evidently endeavoring to obtain bail for them. Several days after this, Davis, a lawyer of Memphis, appeared in Hot Springs. He brought a note from Boatright to Williams, and Williams, upon the strength of this note, directed Lockman to turn the money he had over to Davis, and Lockman did so. Williams told Lockman that Davis was to arrange for bail for the boys in jail, and Lockman was also assured that his bill for feeding the boys would be paid. It appears that Davis did pay Lockman $450, leaving unpaid about $400. Davis also paid Leslie, a lawyer at Hot Springs, $150 on account of his services for the gang, leaving a larger amount unpaid. After the money was turned over to Davis, Davis had a conference with the local lawyers representing the defense with a view of putting up $12,500 as bond for five of the gang held in jail, but finally came to the conclusion that the money, if deposited, would be garnisheed, so he took it back with him to Memphis. In Memphis, Boatright put up at the Franceola Hotel and went under the name of A. J. Alls. Booth, a lawyer in Webb City, Mo., and a friend of Boatright, corresponded with him at Memphis under this name, directing the letters to room 4, Equitable Building, which was Davis' office. Davis also wrote Booth, stating he represented Boatright, and desiring to know the result of certain litigation.

The court below disposed of the evidence by saying that Lockman's manner, as shown in his deposition, impressed the court with the idea that he was not worthy of belief; and, as to the other witnesses, that there was no positive testimony that Boatright was the owner of the money. The case did not rest solely upon Lockman's testimony, but, if it had, we think the court went too far in rejecting that testimony, because he thought the witness unworthy of belief. The credibility of a witness who has given substantial testimony is for the jury. The court may aid the jury by proper instructions in giving due weight to the testimony.

Again, it was not necessary that there be positive testimony establishing Boatright's ownership of the money. The jury had the right to infer from the circumstances in proof that the money belonged to Boatright. There was testimony tending to show that Boatright was the leader of the gang, that this money, by direction of Williams who had remained on the ground, was turned over temporarily to Lockman,

and that Lockman delivered it to Davis by order of Boatright. The jury had the right to infer ownership. The money thus delivered to Davis was never subsequently claimed by Williams, or Hendricks, or any of the gang, or any other person, nor does Davis claim it as his own. It certainly had an owner, and the jury had the right, under the circumstances, to say that Boatright was the owner. He was recognized, by all who had anything to do with the money, as the one who controlled its possession and disposition.

This court has had occasion, in the opinion of Judge Lurton in Mt. Adams, etc., R. R. Co. v. Lowery, 74 Fed. 643, 20 C. C. A. 596, and in that delivered by Judge Severens recently in Minahan v. Grand Trunk Ry. Co. (C. C. A.) 138 Fed. 37, to define, as nearly as may be, the respective provinces of judge and jury in trials by jury, summing up the matter in the latter case, as follows (page 46):

"If there is any substantial evidence bearing upon the issue to which the jury might in the proper exercise of its function give credit, the court cannot rightfully direct the jury to find in opposition to such evidence"—citing cases.

The judgment is reversed, and the case remanded for a new trial.