M. F. WILLIAMS, Admr., v. PAUL J. BASS.

Middle Section. May, 1928.

Petition for Certiorari denied by Supreme Court, January 12, 1929.

A. W. Hughes & S. L. Felts, of Nashville, for plaintiff in error.
McGugin, Evans & Cate, of Nashville, for defendant in error.

HEISKELL, J.—This is an action against Paul J. Bass, doing business as the Bass Auto Company, by M. F. Williams, Administrator, for the wrongful death of his child, Mary Ella Williams, four years of age. The negligent killing is not disputed. Defendant Bass merely disclaims liability by denying ownership or control of the automobile with which the death was inflicted. The case was tried before the Circuit Judge and a jury. At the close of plaintiff's proof defendant's motion for a directed verdict was overruled. But at the conclusion of all the proof His Honor directed a verdict for defendant. The plaintiff brings the case to this court for review on writ of error.

There are two features in the declaration. The automobile which caused the injury was driven by one Duncan, who was alleged to

be the agent and employee of defendant Bass, who was alleged to be the owner of the car which was registered in his name and therefore Bass was liable for the negligence of Duncan. This is the contention of the first and second counts of the declaration. The third count alleged that Duncan was a person of unsound mind, disordered, and defective in his nervous system and mental condition, an habitual drunkard, and so near-sighted and defective in his vision that he was unable to see pedestrians, automobiles, or other moving objects in the road.

That by reason of these things, he was wholly incompetent and unfit to be entrusted with defendant's automobile. In his hands it became a dangerous instrumentality.

That well knowing all these matters, and acting in utter disregard of the safety and lives of other persons lawfully using the public highways, defendant loaned his automobile to Duncan and permitted him to drive it through the streets of the City of Nashville, and on the highways of Davidson County.

That while driving the automobile so loaned to him by defendant, Duncan drove it into plaintiff's automobile, in the manner set forth in the first count of the declaration, killing plaintiff's intestate, under the circumstances there detailed.

That defendant's negligence, wantonness and wrongful act in lending and entrusting his automobile to Duncan, combined with the wrongful acts and negligence of Duncan in driving said automobile, as set forth in the first count of the declaration, was one of the direct and proximate causes of the death of plaintiff's intestate.

Defendant pleaded the general issue and also a special plea, denying the ownership or control of the automobile involved. This plea likewise denied that Duncan was using the car with defendant's knowledge or consent.

In this special plea, defendant averred that the automobile belonged to his brother-in-law, Leslie Tomlinson, who loaned it to Duncan on the day of the killing, without defendant's knowledge or consent.

For replication plaintiff joined issue on the special plea.

It is not questioned by counsel for defendant Bass that if he had been the owner of the car and Duncan the driver had been employed by him and about his business, that the defendant would be liable. Also it is agreed that the proposition of law relied on by counsel for plaintiff is sound. That is as follows:

Where the owner of an automobile entrusts it to a person known to be incompetent and unfit, by reason of youth, inexperience, physical or mental condition, or habits of recklessness, safely to operate such automobile, the owner is liable for injuries caused by the negligent operation of it by such person.

The court held at the conclusion of all the evidence that there was a sufficient conflict in the evidence as to the ownership of the car to justify leaving the case to the jury, but the defendant's evidence established as a fact that Duncan was operating the car without the knowledge or consent of defendant Bass; that the only effect of the evidence for plaintiff as to the ownership and operation of the automobile was to create a presumption of law that it was being used by Duncan in defendant's business, under chapter 162, Acts of 1921 and chapter 59, Acts of 1923, and that when defendant offered evidence to the contrary of this presumption, it disappeared from the case, leaving only defendant's evidence which established as a fact that Duncan was operating the car at the time of the injury without the knowledge or consent of Bass. In other words, the Circuit Judge held that on the question of ownership plaintiff was entitled to go to the jury, but that a finding by the jury that Bass owned the car would avail nothing when the proof rebutted the presumption arising from ownership and showed that the operation of the car by Duncan was without the knowledge or consent of the defendant. We agree that the evidence made an issue for the jury as to ownership. Manifestly then the case must be considered in this court as with the fact established of defendant's ownership of the car, and on the plaintiff's contention that the case should have been left to the jury as to the knowledge and consent of defendant in regard to the operation of the car.

There is proof tending to show that Duncan was an unsafe and improper person to be allowed to drive a car. There is evidence going to show that he was an inebriate; that he had been confined to an insane asylum and had made his escape. If therefore, this court can see from the record that if the case had been submitted to the jury and a verdict rendered for plaintiff on the finding that the operation of the car by Duncan was with the knowledge and consent of defendant, that such verdict would be supported by material evidence, then it was error to take the case from the jury, but if no evidence can be found in the record to support such verdict, then the trial court was right in taking the case from the jury.

Williams, the plaintiff, testified that after the accident, Bass said the car was his, that Duncan worked for him and had been driving his cars and had never had an accident before and that "if he had thought or even dreamed that such an accident like that was going to take place, that Duncan wouldn't have been out there with the car." It was partly, at least, on this testimony that the court below held the conflict sufficient to justify leaving to the jury the question of ownership of the car, and we think the testimony that Bass admitted after the accident that the car was his was sufficient with-

out more, to require leaving the case to the jury on the issue of ownership. If he had said that the car was his and that he let Duncan have it, or that he knew when Duncan took it and did not object, it would present a conflict on the question of knowledge and consent as to the operation of the car sufficient to take this issue to the jury, notwithstanding the insistence of defendant on the trial and his evidence that he did not own the car and did not know about Duncan having it.

It must be admitted that the evidence on this point is not as strong as the illustration just used, but it is sufficient. If he said after the accident and before the trial: "the car is mine. Duncan works for me. He has driven cars for me without an accident. If I had dreamed of any such danger he would not have been out in this car," it would require little change to make what he said read this way: "If I had thought there was any danger of such an accident I would not have let him have my car." Is this not a construction which the jury would have been justified in placing upon the language attributed to him in the record? If as contended by the defendant at the trial, the car belonged to Leslie Tomlinson the brother-in-law of defendant and he, the defendant, knew nothing about Duncan having it, why should he say it was his car, that he had never known Duncan to have an accident before and that if he had dreamed of his having such an accident, he, Duncan would not have been out in the car at that time? If he did not know about Duncan having the car; if he had nothing to do with the car, no control over it, nor over Duncan's use of it and did not know of it, how could his thoughts or dreams of danger have had any influence to prevent Duncan being out in the car at that time?

We must bear in mind that when we come to consider this question of defendant's knowledge and consent, we must assume the jury found him to be the owner of the car. Being the owner and Duncan his employee used to driving for him without an accident, it would not be unnatural for him to say or to mean by what he said: "I am awfully sorry I let Duncan have my car this time. If I had dreamed of an accident I would not have done it."

The question may be a close one. We cannot help that. In case of doubt as to whether a question of fact belongs to the jury or to the court, it is safer to leave it to the jury. Counsel on both sides in this case have prepared and set before us an elaborate collation of authorities on the questions raised. There is much interesting and discriminating discussion as to the distinction between presumption and prima-facie evidence. Also as to whether or not the evidence which creates the presumption when the presumption is rebutted, remains in the case to be considered or automatically

evaporates. Our statutes use both terms, presumption and prima-facie evidence.

"Proof of ownership of such automobile, auto truck, motorcycle, or other propelled vehicle, shall be prima-facie evidence, and raise a presumption that said automobile, auto truck, motorcycle, or other motor-propelled vehicle at the time of the action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or damage or cause of action arose. . . .

"To secure license and license numbers for the operation of said motor-propelled vehicle, shall be prima-facie evidence of ownership of said automobile, auto truck, motorcycle or other motor-propelled vehicle by the person, firm or corporation in whose name said motor-propelled vehicle is registered." . . . "and such proof of registration shall likewise be prima-facie evidence that said automobile, auto truck, motorcycle or other motor-propelled vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment." See Acts of 1921, ch. 162 and Acts of 1923, ch. 59.

Authorities are cited both for and against the proposition that the prima-facie case cannot be overcome so as to be taken from the jury by the positive testimony of defendant's witnesses to the contrary. Without going into these conflicting cases, it must be taken as the rule, that when the proof of the defendant introduced to meet and rebut the prima-facie case made out by plaintiff, is met by contradictory material evidence introduced by the plaintiff, then an issue is made which cannot be taken from the jury. One of the cases relied on in brief for defendant to support the contention that when a presumption is rebutted and overcome, it disappears and leaves nothing to be passed on by the jury, contains this:

"When the fact is proven to the contrary without contradiction, no conflict of evidence arises, but the presumption is simply overcome." Martinelli v. Bond, 42 Calif. App., 209, 183 Pac., 461.

Other authorities cited for same purpose speak of the presumption as being overcome by uncontradicted evidence.

Another case relied on by defendant is Railway v. Fuller Combing Gin Co., 2 Higgins, 344. The headnote is:

"A presumption of liability created by law with no corroborating evidence disappears or ceases to exist when there is evidence explanatory and in rebuttal. In such case the plaintiff is not entitled to go to the jury on his presumption alone."

In the course of the opinion we find this:

"Of course if the testimony were conflicting on any material question of fact and the presumption arose out of such testimony . . . then the matter would be one to be submitted to the jury."

It will be found that this element runs through the cases relied on by defendant. In Fahey v. Madden, 56 Cal. App., 593, the court speaks of the presumption being overcome by positive evidence to the contrary and again referring to another California case, Maupin v. Solomon, 41 Cal. App., 323, the court says: "Respondent there contended that the inference of agency arising from proof of such ownership and use remained in the case in spite of clear, positive and uncontradicted evidence to the contrary."

Another case cited for defendant is Ludberg v. Barghoom, 73 Wash., 476, in which the court said:

"The fact that the automobile was admitted to belong to the defendant and that the driver of the automobile was in the employ of the defendant was sufficient to put the defendant upon proof that the automobile was not used in his business or for his employment has been held in a number of cases. Knust v. Bullock, 59 Wash., 141, 106 Pac. 329; Kneff v. Sanford, 63 Wash., 503, 115 Pac., 1040; Burger v. Taxicab Motor Co., 66 Wash., 676, 120 Pac., 519.

"But where, upon the defense, it is shown conclusively and without any substantial dispute that the automobile was not being used at the time of the injury in the defendant's employment or upon his business, and was being used by some other person on business of his own and without any reference to the business of the owner, it becomes the duty of the court to direct the judgment under section 340, Rem. & Bal. Code. We think the trial court, therefore, properly directed a judgment in favor of the defendant."

So in the Kentucky case of Mullen v. Crisp, 207 Ky., 31, the court speaks of the presumption being rebutted by uncontradicted evidence.

In Mahan v. Walker, 97 N. J. Law, 304, it is said presumptions may be wiped out by uncontradicted proof to the satisfaction of the court, in which case the matter is a court and not a jury question. These are all cases relied on for the defendant to support the contention that the presumption such 'as that drawn from ownership, when rebutted, disappears and does not remain as evidence for the plaintiff. This is true, but the rebutting evidence must be clear, positive, conclusive, uncontradicted, and indisputable. We do not care to quarrel with these cases. With a presumption or a prima-facie case on one side and such proof on the other, there is nothing to go to the jury and a case is made for a

directed verdict. Even under the authorities cited for defendant, the question resolves itself into one of whether or not the facts of the case warrant a directed verdict. So in the instant case if there is no material evidence to contradict the evidence relied on to rebut the presumption or the prima-facie case, then the case was properly taken from the jury, but if the evidence for plaintiff raised a material conflict with that introduced to rebut the presumption or prima-facie case, then an issue was presented for the jury. The view we have taken of the bearing of the authorities relied on by counsel for defendant makes it unnecessary to discuss those cited in favor of plaintiff.

There is no room for controversy as to the rules applicable to directed verdicts.

"There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issues to be tried. That is, if there is any dispute as to any material fact, the case must go to the jury; if there is no dispute as to such facts, the question is one of law for the court. . . ." (Tyrus v. R. R., 114 Tenn., 594) quoted in Railroad v. Morgan, 132 Tenn., 6.

"It has been established by repeated decisions of this court that, upon a motion for peremptory instructions, the entire evidence must be looked to, and that it must be given the construction most favorable to the adversary party, and all reasonable inferences allowed in his favor, and that, if there is then seen to be a dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion should be denied. Kinney v. Railroad Co., 116 Tenn., 451, 92 S. W., 1116.; Mayor, etc., v. Reece, 138 Tenn., 479, 197 S. W., 492, L. R. A., 1918B, 349; Western Union Tel. Co. v. Lamb, 140 Tenn., 111, 203 S. W., 752." Johnston v. Ry. Co., 146 Tenn., 149.

"In determining the question as to whether the motion for peremptory instructions should have been granted, we must take as true the strongest legitimate view of the evidence in favor of the verdict, and discard all countervailing evidence. Machinery Co. v. Hargraves, 3 Cates, 476, 484, 485." Walton v. Burchell, 121 Tenn., 723.

In Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn., 556, the rule is stated that the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence. Walton v. Burchell, 121 Tenn., 715, 121 S. W., 391, 130 Am. St. Rep., 788; Railroad v. Williford, 115 Tenn., 108, 88 S. W.,

490

178; Knoxville Traction Co. v. Brown, 115 Tenn., 323, 89 S. W., 319; Kinney v. Railroad, 116 Tenn., 450, 92 S. W., 1116; Norman v. Railroad, 119 Tenn., 401, 104 S. W., 1088; Railroad v. Morgan, 132 Tenn., 1, 175 S. W., 1148; Mayor & City Council v. Reese, 138 Tenn., 471, 197 S. W., 492, L. R. A., 1918B, 349; Johnson v. Ry. Co., 146 Tenn., 135, 240 S. W., 429.

Applying these rules we think the motion for a directed verdict should have been overruled and the case have been left to the jury. The statutes provide that registration in the name of the defendant shall be prima-facie evidence of ownership and raise the presumption that the automobile was used at the time of the accident with the knowledge and consent of the owner. If this is rebutted by positive uncontradicted indisputable proof, then there is nothing to go to the jury. But if the evidence is conflicting as to the rebuttal. If the defendant is shown to have made admissions which reasonable minds may construe as in conflict with his testimony relied on to rebut the presumption, then there remains in the case a question for the jury and the directed verdict for defendant should not have been given. The case is reversed and remanded for a new trial at cost of the defendant.

Owen and Senter, JJ., concur.