# JOHN WYLIE v. GREEN RIVER LUMBER CO.

Western Section. June 22, 1928.

Petition for Certiorari denied by Supreme Court, January 12, 1929.

W. G. Cavett, of Memphis, for plaintiff in error.

Wilson, Gates & Armstrong and E. W. Braden, all of Memphis, for defendant in error.

SENTER, J.   This appeal is from the action of the trial judge in sustaining the motion of defendant below for a directed verdict at the conclusion of all the evidence, and in dismissing the suit of plaintiff below at the cost of plaintiff.

The parties will be referred to as in their status in the court below, John Wylie, as plaintiff, and Green River Lumber Company, as defendant.

The plaintiff sued the defendant to recover $10,000 as damages for alleged personal injuries sustained by plaintiff on account of the alleged negligence of the defendant.  The declaration averred that the defendant is a corporation engaged in operating a saw mill in Shelby county, and operated certain slab conveyors, which slabs were conveyed from the saw mill by machinery, or conveyors operated by machinery, and dumped in piles, as wood, and that this wood, being the slabs from the logs sawed into wood, was sold to customers who purchased the same at the mill, and loaded same into wagons from the place where it was dumped by the conveyors, and hauled away by the customers.  The declaration alleges that the plaintiff was and had been for some time a customer of the defendant prior to the date he received the injuries complained of; that on various and divers occasions he had bought wood from the defendant at their plant, and that there was a rule and custom of the defendant, that said conveyors would not be put in use, and timber or wood would not be conveyed from the mills or saws onto said conveyors and dumped out while customers were engaged in picking up and loading their wagons with the wood; that said defendant had never conveyed wood or timber on said conveyor while the plaintiff was picking up and loading the wood on his wagon, and that it was the duty and had been the custom of the defendant to give notice and warning at any time it began to convey wood on said conveyors to the place where plaintiff was picking up and loading the wood on his wagon; that on or about the 12th day of May, 1926, while the plaintiff had been invited upon the premises of said defendant, as a customer, and had become a customer of the defendant in the purchase and delivery of wood to be delivered on plaintiff's wagon, and while plaintiff was picking up and loading said wood upon his wagon; and while the said conveyor, where the plaintiff was stationed,  was not in operation and not conveying any timber over same, and while the plaintiff was using due care, and caution and exercising foresight, the defend-

ant negligently and recklessly, and without giving to plaintiff any notice, put in operation the conveyor at the place where plaintiff was engaged in loading his wagon, and that a large stick of wood was conveyed by the conveyor onto the dump, and which large stick of wood or timber struck the plaintiff with great force, resulting in the serious injuries set out and described in the declaration. To this declaration the defendant filed pleas of not guilty, and of contributory negligence on the part of plaintiff.

The plaintiff was the only witness who testified with reference to the facts and the incidents connected with his alleged injuries. The other witnesses for plaintiff only testified as to the nature and extent of the injuries received by him. Hence, it only becomes necessary to consider the evidence of the plaintiff in determining the questions made on this appeal. The plaintiff testified that he was injured on May 12, 1926, at the plant of the defendant; that he had been a customer of the defendant for some time prior to the date of his injury, buying wood from the defendant, some times two trips a day with a one-horse wagon. He testified that there was a colored man in the employ of the defendant who would warn those who were getting wood from the dump where it was conveyed from the mill by the conveyors as to when the conveyor would start. He testified that on the day and at the time he received the injury that he was engaged in loading his wagon from the pile of wood where it was dumped by the conveyor, and that the conveyor at that dump was not then in operation, and that while he was stooped down on the woodpile picking up wood, the conveyor started conveying wood to the dump or pile where he was getting the wood, without any warning to him that it was going to start, and that a large stick of wood came from the conveyor and struck him on the back while he was bending over picking up wood; that he was not looking and did not see the stick of wood which struck him as it came from the conveyor. He stated that on the date and at the time he was getting this particular load of wood no wood was being put out on that conveyor or chain, and that he was not looking and did not see that this conveyor had begun to operate until the stick of wood came over the conveyor and struck him. He also testified that at the time he began loading his wagon with the wood that the wood coming from the mill was being conveyed over another conveyor on the west side of the mill, and that no wood had come over the conveyor where he was at work loading his wagon until this stick struck him. On cross-examination he stated that the conveyor was operated from inside the mill, and as the wood went onto the conveyor chain it was conveyed to the dump, and that those operating the conveyor in the mill could not see the dump from their position

in the mill, but he also stated that on other occasions there was a man out on the yard who warned them when wood would be coming over on the respective conveyors, but at the time he was injured the defendant did not have anyone there to give the warning. He further stated on cross-examination that he did not know whether the chain connected with the conveyor and on which wood is conveyed from the mill to the dump was running at the time or not. On this subject he was asked and answered as follows:

"Q. And that conveyor had a chain running over that conveyor all the time that brings the wood out? A. There wasn't any wood coming out that day until the chunk came.

"Q. But I am talking about, the chain was running? A. I couldn't tell. All I know—

"The Court: Why don't you answer the question. He asked you if that chain which carried the wood, when they put any wood on it, was running all the time that morning or not?

"The Witness: Judge, if it was, Your Honor, please. I didn't notice it.

"Q. (By the Court) You don't know whether it was or not? A. No, sir. I was off gathering wood and paying no attention.

"Q. John, when the wood comes out on the conveyor it all falls in one spot there? A. Yes, sir."

The above are the material facts testified to by the plaintiff. It appears from his evidence that there were two other persons present at the time he was alleged to have received his injuries, but they did not testify. Upon this evidence the learned trial judge sustained the motion of defendant for a directed verdict in favor of the defendant.

The several assignments of error are all directed to the action of the court in holding that there was no material evidence offered that could support a verdict in favor of the plaintiff.

From this evidence it appears that the plaintiff, as a customer of the defendant, and on the premises of the defendant for the purpose of buying wood, as he was accustomed to do, was an invitee, and the defendant owed to him the duty of ordinary care. The plaintiff is also charged with the duty of exercising ordinary care for his safety. It is contended for plaintiff that the defendant was guilty of gross negligence in not having some person to warn the plaintiff when it started to operate the conveyor at the time plaintiff received his injuries. We cannot agree to this insistence. These conveyors are a part of the machinery of the mill and are used for the purpose of conveying the sawed slabs of wood from the sawmill to a dumping ground. It appears that the defendant operated two or more of these conveyors in connection with its saw

mill operations, but only one is operated at the same time. The wood when sawed is carried by the conveyor to a dump, and when one dump gets high enough, the conveyors are shifted, and another conveyor will convey the wood to another dump. The customers who buy this wood are permitted to take the wood from the dump and load it onto the wagon. The plaintiff was so engaged at the time he received his injuries. The plaintiff testified that on other occasions an employee of the defendant was about these dumps so as to warn those who were getting the wood when it would be safe to go under the conveyor. At most this would relieve the person getting the wood of the necessity of looking out for themselves while so engaged. But in the absence of some person present to warn or to notify the person getting the wood, ordinary care by a person getting the wood would require him to take some care for his safety and to keep some lookout. It was certainly in the knowledge of the plaintiff that these conveyors were used for the purpose of conveying it from the sawmill to the dumping ground, and the general use and purpose of having the conveyors. The plaintiff knew, therefore, that these conveyors were liable to begin conveying wood at any time when the saw mill was running. According to his own evidence he was paying no attention to this conveyor, apparently because it was not in operation a the time he began loading his wagon. He states that he did not even notice whether the chain which formed a part of the conveyor was running. He stated that he was paying no attention to the conveyor and that he was not expecting it to start up. We are of the opinion that it was contributory negligence on his part to load wood from this dump without giving any heed or paying any attention to the conveyor. He knew that it was liable to start at any time while the mill was in operation, and he admits that he was paying no attention to it, and that at the time he received his injury, he was engaged in picking up wood, and bending over and not looking to see if the conveyor had started.

Appellant has cited authorities in support of the contention made to the effect that where a licensee or invitee is injured by a sudden or new peril, the owner of the premises is under duty to warn him of the danger if he has notice of it. (Westborn Coal Co. v. Willoughby, 133 Tenn., 257; 29 Cyc., 474). Appellant relies especially on the case of Cash v. Casey-Hedges Co., 139 Tenn., 179; 201 S. W., 347, where it is said by the court: "Where one is performing some act which is likely to be dangerous to persons in the vicinity, it is the duty to warn such persons of the danger, furthermore the notice must be sufficient to appraise the person notified of the danger." In that case the defendant was engaged in the erection

of a heavy smokestack for the town of Lenoir City. Cash was employed as a laborer. The smokestack was about sixty feet long and four feet in diameter, and of great weight. At the time of the accident the foreman in charge, and his men, were elevating the smokestack to a vertical position, using a pole to which was attached a pulley. It was a hazardous undertaking to put the smokestack in position by the means employed, and the foreman in charge realized the danger of the smokestack falling before being placed in position and so expressed his fear and apprehension and notified some of the employees to be on the lookout. The plaintiff was engaged in laying brick, and was employed by another contractor on another part of the work but near enough to the smokestack to be in danger if the smokestack fell. He was not notified of the danger and did not hear the warning given by the foreman, which warning seemed to have been given to those assisting in erecting the smokestack only. In that case, and under those facts the court quoted the rule in 29 Cyc., 474, hereinabove quoted, and added:''

"The danger of the collapse of the stack increased as it was elevated. The fact that Hannah, the foreman of this defendant, told his crew to be on the lookout as he did not know what might happen, shows that he feared the smokestack might fall. He knew that Cash was engaged in laying brick and not in a position to observe what was being done.

"If it be admitted that the deceased was guilty of contributory negligence in working in a position which had the appearance of danger, still this will not excuse the defendant from liability where it constantly increased his peril, knowing that deceased did not appreciate the danger and was not in a position to avert the accident and its consequent injury. Such conduct is mildly characterized as gross negligence; it is rather wilfullness or wantonness.''

From a reading of that case and the cases cited by the writer of the opinion in the Cash case, and especially the quotation from Railroad v. Pugh, 97 Tenn., 627, 37 S. W., 555, cases of gross negligence amounting to wilfullness or wantonness are discussed, in holding that the contributory negligence of the injured person would not bar a recovery. This is the well-recognized rule to the effect that where the plaintiff is guilty of some negligence which contributes to his injury, and the defendant is guilty of gross negligence, such as to imply wilfullness or wantonness, it becomes the direct, proximate and efficient cause of the injury, and the contributory negligence, if any, of the injured person, in such cases, will not bar a recovery for the injuries sustained. (R. R. v. Pugh, supra; R. R. v. Williford, 115 Tenn., 122, 88 S. W., 178; Cooley on Torts, p. 674; Todd v. R. R., 135 Tenn., 92, 185 S. W., 62).

But this rule cannot be invoked under the facts of this case. This was not a new peril or a new danger. These conveyors were operated as a part of the saw milling machinery, and used to convey the refuse or slabs sawed into wood, away from the sawmill to a dump pile where the same was sold as wood. Under these facts it cannot be successfully contended that the defendant was guilty of gross negligence, and such gross negligence as would entitle the plaintiff to a recovery, even though the plaintiff was guilty of contributory negligence, or more properly not in the exercise of ordinary care for his own safety.

We think there is no better settled rule, than that where a danger is obvious or known, a person is bound to use ordinary care to avoid it, and that a recovery cannot be had where the person injured could, by the exercise of ordinary care, have avoided the injury, even though the defendant was negligent. (29 Cyc., 515; Knoxville v. Cain, 128 Tenn., 250; Young v. Prouty Lumber & Box Co., 159 Pac., 565 (Ore.).

It is equally well settled that a defendant is under no legal duty to give warning to one of a danger that is obvious, and can be seen and known by the exercise of ordinary care. This is certainly true where the danger is known to the person injured, or should be known because of his previous opportunities for learning and knowing the danger. (Buckeye Cotton Oil Co. v. Antonio Campagna, 146 Tenn., 389; Walker v. Nona Mills Co., 92 So. 319 (La.); 29 Cyc., 474, and authorities cited therein).

It is also a well-settled rule in this State that where it appears from the uncontradicted proof that the injured person was guilty of contributory negligence, which contributed to the injury, as one of the proximate, direct and efficient causes resulting in the injury, the question is one of law, and not a question of fact. In such cases a motion for a directed verdict in favor of the plaintff should be granted. (Railway v. Haynes, 112 Tenn., 712; Traction Co. v. Brown, 115 Tenn., 329, 89 S. W., 320; Tyrus v. R. R., 114 Tenn., 593; Knoxville v. King, 128 Tenn., 250; Tenn. Copper Co. v. Simpson, 6 App. Cas., 536.)

In all the cases the rule is well recognized that there is no power in the trial judge to direct a verdict in any case in which there is a dispute as to any material, determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried. This is so stated in Kinney v. R. R., 116 Tenn., 451. If there is any dispute in the evidence as to material facts the question must be presented to the jury, and the court would not be warranted in determining any controverted or disputed facts. (R. R. v. Morgan, 132 Tenn., 7). In passing on the motion by de-

fendant for a peremptory instruction in its favor, it must be assumed that the evidence of plaintiff's witnesses is true. (Knoxville v. King, supra). In considering a motion for a peremptory instruction the evidence must be viewed in the most favorable light to plaintiff's case. (Nashville v. Reese, 138 Tenn., 471).

But where there is no conflict in the evidence, as in the instant case, as to the conduct of the plaintiff at the time and before he received the injuries complained of, and the facts and circumstances relative thereto are uncontroverted, it resolves itself into a question of law for the court as to whether under such facts the plaintiff is guilty of contributory negligence so as to bar a recovery in a common-law action. (Ill. Cent. R. R. Co. v. Beaver, 3 Tenn. App. Rep., 72, and cases cited.)

We are of the opinion that under the facts as stated by the plaintiff himself, he was not in the exercise of ordinary care for his safety at the time he received the injuries complained of, and that he was guilty of contributory negligence which contributed as one of the direct, efficient and proximate causes, and which would bar any recovery.

It results that all assignments of error are overruled, and the judgment of the circuit court is affirmed. Appellant will pay the cost of this appeal, there being no appeal bond, the appeal being in forma pauperis.

Owen and Heiskell, JJ., concur.