ALICE L. ANDERSON et al. v. SUSIE M. STRIBLING et al.

Middle Section.   June 18, 1932.

Petition for Certiorari denied by Supreme Court, December 17, 1932.

Morris & Simpson, of Waverly, Albert Williams and S. L. Felts, both of Nashville, for appellants.

Carmack Cochran, of Nashville, and J. E. Tubb, of Waverly, for appellees.

FAW, P. J.   This case was heretofore, viz: on April 16, 1932, stricken from the docket of this Court, for the reason that no transcript of the technical record, or record proper, had been filed in this

Court—the transcript filed containing only a bill of exceptions—and it did not appear otherwise than from the bill of exceptions that an appeal had been prayed or granted.

On April 25, 1932, the appellants, Alice L. Anderson and her husband J. G. Anderson, filed a petition to this Court for a rehearing and for leave to suggest a diminution of the record so as to supply the pleadings, process, decrees, order granting an appeal and other minute entries, appeal bond, and other matters belonging to the record proper and which (it was alleged in the petition) were contained therein below. The petition is accompanied by a transcript of the aforesaid technical record, which is certified as such by the Clerk and Master of the Chancery Court of Humphreys County.

Rule 20 of the published Rules of this Court provides that, "suggestions of diminution of record shall be made before the case is called for trial, and at such time as gives opportunity to have the record perfected for hearing, or the imperfection of the record will be waived; provided, however, that a suggestion of diminution of the record, accompanied by a duly certified transcript of the omitted part or parts of the record, if presented to the Court before the case is finally disposed of, may be considered if, in the opinion of the Court, justice so requires."

As stated by counsel for defendants in their reply to the petition to rehear, the enforcement or non-enforcement of the above quoted Rule "lies within the discretion" of this Court (Hilton v. Johnson City General Hospital, 160 Tenn., 535, 26 S. W. (2d), 626); meaning, of course, a sound judicial discretion—not an arbitrary discretion.

It has been the practice of this Court to treat a case as not "finally disposed of" so long as it is pending upon a petition for a rehearing seasonably filed.

We are of the opinion that, in the present case, the petition for a rehearing should be granted and the diminution of the record suggested should be allowed, and it is accordingly so ordered, and our former judgment of April 16, 1932, striking the case from the docket, is vacated and set aside. The supplemental transcript exhibited with the petition to rehear will be filed as a part of the transcript of the record in this Court, and the decree of the Chancery Court will be reviewed on the record, insofar as it is challenged by the assignments of error filed by the appellants.

The bill in this cause was filed in the Chancery Court of Humphreys County, on May 21, 1930, by Alice L. Anderson and J. G. Anderson, residents of the State of Florida, against Susie M. Stribling and R. A. Jackson, also residents of the State of Florida. The complainants are husband and wife, and the defendants are sister and brother.

In their bill the complainants allege that on February 3, 1928, they recovered a judgment for the sum of $2,500 principal, $326.50 in-

terest, and $332.65 attorneys' fees—aggregating $3,159.15—and the costs of the suit, in the Law Court at Lakeland, Florida, against the defendant Susie M. Stribling; that an execution duly issued from said judgments was returned nulla bona on February 2, 1929; that said judgment remains in full force and effect; that complainants and defendants resided in the State of Florida when said judgment was rendered and were still residing there when the bill was filed.

Complainants further allege in their bill that said suit in the State of Florida was based on a note dated Lakeland, Florida, March 20, 1926; that prior to the institution of said suit in the State of Florida, the defendant Susie M. Stribling was the owner of five several tracts of land situated in the 2nd Civil District of Humphreys County, Tennessee, all of which tracts of land are fully described in the bill; that on February 1, 1927, defendant Susie M. Stribling undertook to convey by deed to R. A. Jackson, her brother and co-defendant "at a cash consideration, or pretended cash consideration," of $3,400, two of the aforesaid tracts of land as designated in the bill; that after the institution of said suit in Florida, viz: on September 21, 1927, defendant Susie M. Stribling undertook and pretended to convey by deed to defendant R. A. Jackson the remaining three tracts of land in Humphreys County as aforesaid—the deed reciting a consideration of $10 cash "and other valuable considerations."

"Complainants further allege in their bill that the aforesaid conveyances were without consideration, or for a wholly inadequate consideration; that said lands were "worth around $7,000;" "that said conveyances were made and contrived of fraud, covin, collusion and guile, to the intent and purpose to delay, hinder and defraud the creditors of the said Susie M. Stribling, and especially to practice a fraud on the complainants in this bill in the collection of said judgment;" that with the exception of the aforesaid real estate in Humphreys County, the defendant Susie M. Stribling "has no other property in this State or elsewhere."

Complainants also allege in their bill, upon information and belief, that defendant R. A. Jackson took said conveyances well knowing the fraudulent purpose and character thereof and with intent to aid said sister to hinder, delay and defraud her creditors, especially the complainants, in the collection of their just debts; that said conveyances were collusively made, and that there is a secret agreement between defendants whereunder the said R. A. Jackson is to hold the land in secret trust for the benefit of his said sister and co-defendant.

Complainants further allege, upon information and belief, that the defendant Susie M. Stribling is still in the active possession of said land, renting and controlling the same, and paying the State and County taxes thereon and said land is still assessed to defendant

Mrs. Stribling. Complainants charge that said conveyances are fraudulent in law and in fact.

After praying for publication for the defendants and waiving answers on oath, complainants prayed for an attachment and an injunction; that the aforesaid conveyances by defendant Susie M. Stribling to defendant Jackson be decreed to be fraudulent null and void as against the complainants; that complainants have a decree against defendant Susie M. Stribling for the amount of their said judgment rendered in the State of Florida, with interest and costs; that said tracts of land described in the bill be sold for the payment of such decree, upon such terms as the Court may fix and in bar of the equity of redemption, and the proceeds of such sale be applied to the satisfaction of complainants' decree. Complainants also prayed for general relief.

Subsequently, the bill was amended so as to allege that the note on which the Florida judgment was obtained was a "State of Florida contract at the date said note was executed and said Florida judgment obtained by the complainants, and said note or Florida contract at the time was not violative of any usury law of the State of Florida."

Defendants filed an answer to the bill on July 31, 1930, in which they deny that complainants "have a legal, valid and binding judgment against the defendant Susie M. Stribling for the sum of $2,500 principal, $326.50 interest, and $332.65 attorneys' fees, in the Law Court of Florida, or for any other sum."

Defendants admit in their answer that defendant Susie M. Stribling executed the two deeds mentioned in the bill, and conveyed the lands therein described to her brother and co-defendant Jackson; but the defendants categorically deny all the allegations of the bill tending to charge them, or either of them, with a fraudulent purpose or design in the execution of said deeds, or any purpose to delay, hinder and defraud the complainants, or other creditors of Susie M. Stribling, in the collection of their debts, by making said conveyances.

All allegations of the bill to the effect that said conveyances were collusively made pursuant to a secret agreement between the two defendants whereby defendant Jackson was to hold said land in secret trust for defendant Stribling are denied by defendants in their answer.

Defendants denied that said conveyances were made without consideration, or for an inadequate consideration, and they denied that said lands are "worth around $7,000."

Defendants also denied that defendant Susie M. Stribling is still in the actual possession of said land, renting and controlling the same, and paying the taxes thereon as her own. In this connection, it is said in defendants' answer that, "it is true that she (Susie M. Strib-

ling) has perhaps assisted and advised the defendant R. A. Jackson some with reference to the renting of said lands since said conveyances; but this was because the lands were rented at the time they were conveyed and defendant Mrs. Stribling was more familiar with the arrangements made with the tenants with reference to said lands than was the defendant Jackson.'' It is further stated in defendants' answer that, ''it may be true the lands were assessed to defendant Mrs. Stribling, but if so it was because of no fault of these defendants. The deeds making said conveyances were duly recorded in the Register's office of Humphreys County, Tennessee, and defendants supposed the Tax Assessor would make the necessary changes in the assessment from these records.''

Defendants demanded a jury to try the issues of fact, which demand was granted by the Chancellor and issues were made up under the direction of the Court for submission to the jury, as follows:

''1. Was the sale and transfer of the land described in complainants' bill made by the defendant Susie M. Stribling to her co-defendant R. A. Jackson for the purpose of hindering, delaying or defeating the complainants in the collection of any obligation that she might be owing to them? Answer—.

''2. If the above question should be answer 'Yes' then did the defendant Jackson know the purpose of Mrs. Stribling for making such conveyances at the time he purchased said lands? Answer —.

''3. How much did the defendant Jackson pay the defendant Susie Stribling for the lands described in the bill? Answer —.

''4. What was a fair consideration or valuation in the lands described in complianants' bill at the time the transfers were made of the same between the defendants? Answer —.''

After the answer of the defendants was filed and after depositions of witnesses on behalf of complainants were taken, but before the case came on for trial, defendant Susie M. Stribling died, and the present suit was revived against her son and sole heir at law, Ernest Stribling, an adult, and, it appearing that she died intestate, John Finley Shannon was appointed administrator ad litem of the estate of said Susie M. Stribling, deceased.

A jury was impaneled and sworn to try the issues, and the trial before the jury proceeded to the close of the complainants' evidence in chief, when the defendants, through their solicitor, moved the Court for peremptory instructions to the jury in their favor, which motion was as follows:

''Your Honor please, we want to move the Court to instruct the jury to return a verdict in favor of the defendants on the whole case on the ground that the judgment was obtained according to the proof in the State of Florida against Mrs. Susie

M. Stribling alone, the record shows that she is dead, and it does not show that it has been revived against her administrator or her heirs, and there is no judgment here against either of these defendants, and we think your Honor please the case ought to be dismissed, or rather ought to be a verdict here in favor of the defendants in the whole case on that ground.

"Now then we want to move the Court to instruct the jury to answer the first issue in the negative. The first issue is, 'Was the sale and transfer of the land described in the complainants' bill to her co-defendant for the purpose of hindering, delaying or defeating the complainants in the collection of any obligations that she might be owing to them,' on the ground that there is no proof here, competent proof, showing that there was any collusion between these parties, and that the purpose of the sale was for the purpose of defeating these parties in the collection of their debt.

"The only evidence there is before the Court is that in quoting from the deed as considered as read, in March, 1927, Mrs. Stribling sold two tracts of land to her co-defendant R. A. Jackson, for $3,400 that was immediately placed on record pretty soon thereafter. In September, 1927, she conveyed to R. A. Jackson for $10 consideration and other valuable consideration three tracts of land, and that deed shows it was put on record pretty soon thereafter.

"We want to ask the Court to instruct the jury to answer in this second issue to answer that, it reads as follows: 'If the above question should be answered, "Yes," that is take it for granted that the first issue would be answered in the affirmative, then did the defendant Jackson know the purpose of Mrs. Stribling for making such conveyance.' We want to ask the Court to instruct the jury to answer that in the negative because not an iota of proof that Jackson knew anything of the purpose of Mrs. Stribling for making that transfer. He bought it and paid a valuable consideration, and the deed recites a consideration of $3,400, that ought to be ample for two ordinary tracts of land at that time. The other deed recites $10 and other valuable considerations.

"There is nothing here, your Honor, take the only evidence that you have here before the Court, there is no two tracts of land there, I don't think that would amount in their assessed valuation to $3,400, one tract at $1,600 and the other at $1,100, the other at $900 and one at $800, you take the two highest tracts and it only makes $2,700. There is nothing to show that he didn't pay it.

"Now it says here how much did the defendant Jackson pay the defendant Susie M. Stribling so far as the first two tracts are concerned, we want to move the Court as to the first deed that the amount paid in the first deed was $3,400, and the other deed it says $10 and other valuable considerations, that it be instructed that they return it as read by them and not by us. It is their testimony—not ours. As to the fourth, 'What was the fair considerations of the lands described under the proof offered here. It could not be anything less nor more than what Mr. Williams said $3,680, and we would ask the Court to peremptorily instruct the Jury."

In response to the above quoted motion of defendants, the Chancellor said: "Gentlemen, I think the motion is good. The motion is sustained, and the jury will be so instructed."

The record then recites that, "thereupon the Court directed the jury to answer 'no' to the first issue of fact submitted to it and that they need not answer as to other facts submitted, because they were immaterial when the first issue of fact was answered 'no.' Thereupon without going further into the record the Court announced to the jury and the solicitors of both sides that the case was ended, and the complainants' bill was dismissed, and the complainants taxed with the cost for which execution may issue against the said complainant and their surety, the Fidelity & Deposit Company of Maryland."

A motion for a new trial on behalf of complainants was overruled, and thereupon the complainants prayed, obtained and perfected an appeal to this Court, and have assigned errors here, through which they assert that the decree of the Chancery Court is erroneous in the following particulars:

(1) "In holding and decreeing that the proof adduced by the complainants on the hearing did not establish that the conveyances by Mrs. Stribling to her brother R. A. Jackson were fraudulent and void as against complainants."

(2) "In holding and decreeing that the evidence produced by complainants did not warrant the inference that the conveyances were fraudulent and void and did not make a case to go to the jury."

(3) "In not holding that the evidence produced by complainants was sufficient to authorize the inference that the conveyances were fraudulent and void, and in not submitting the cause to the jury on such evidence, and in directing and instructing the jury to answer the issues in favor of the defendants, and in dismissing the bill."

(4) "In refusing and declining to allow complainants to read to the jury the certified transcript of the Court proceedings in the

Circuit Court of Polk County, Florida, which is Exhibit 'A' to the bill and Exhibit 1 to the deposition of J. A. Raulerson.''

As we have seen, the learned Chancellor sustained the defendants' motion for peremptory instructions without stating the particular or particulars wherein he thought the motion was ''good.'' It results that if the verdict was properly directed upon any ground stated in the defendants' motion, the decree should be affirmed. Therefore, the first three assignments of error are comprehended in that part of the third assignment wherein it is asserted that the Chancellor erred ''in directing and instructing the jury to answer the issues in favor of the defendants, and in dismissing the bill.''

The proposition advanced by the first paragraph of the defendants' motion was not pertinent or relevant to either of the four issues which had been formulated for trial by the jury, and, even if based upon a sound legal predicate, it would not have afforded a reason for directing a verdict by the jury, but would have justified the Chancellor in discharging the jury and dismissing complainants' bill.

The complainants filed as an exhibit to their bill, and offered in evidence, a transcript of a record from the Circuit Court of Polk County, Florida, duly certified according to the Act of the Congress of the United States, from which it appeared that, on February 3, 1928, complainants recovered a judgment against defendant Susie M. Stribling for $3,159.15 and costs of suit, and that an execution duly issued from said judgment, was returned nulla bona on February 2, 1929. So far as appears, there has been no revivor of said judgment in the Florida Court since the death of the judgment debtor, Mrs. Stribling.

It is the contention of the defendants that when Mrs. Stribling died the Florida judgment ''died with her,'' and that complainants could not, and cannot, proceed in the present suit ''on an abated judgment,'' or a ''dead judgment''—that upon the death of Mrs. Stribling complainants could not prosecute this suit further without a revivor of the Florida judgment by the Court in which it was rendered. This is, we think, a mistaken view. It is true that a revivor of a pending suit, upon the death of a necessary party, is indispensable. In the absence of a seasonable revivor the suit abates, and a judgment or decree rendered either in favor of or against a deceased party is an absolute nullity. Morrison v. Deaderick, 10 Humph., 341.

But an unsatisfied judgment does not die with the death of the judgment debtor. It merely becomes dormant; that is, it becomes temporarily inoperative to the extent that execution therefrom cannot be levied upon the lands descended without a revivor against the heir, or upon the goods and chattels of the estate of the deceased without a revivor against his personal representative. 1 C. J., p. 169,

sec. 288; 3 Words & Phrases Judicially Defined, p. 2183; Coit v. Sistare, 85 Conn., 573, 84 Atl., 119, Anno. Cas., 1913-C, 248, 249; McIntosh v. Paul, 6 Lea, 45; Coombs v. Jordan (Md.), 22 Am. D., 236, 273.

In McIntosh v. Paul, supra, the personal representative filed a bill in the Chancery Court to have the estate of his decedent administered therein as an insolvent estate. Pursuant to a decree in the cause, there was an account of the assets and debts, and among the claims filed was a judgment of the Supreme Court rendered against the decedent in his lifetime for $9,095 which had not been revived. Notwithstanding the fact that the judgment had not been revived in and by the Court in which it was rendered, it was allowed as a claim against the estate, and the decree of confirmation of the Master's report directed that it be paid pro rata with other claims. On appeal, the Supreme Court said: "There can be no doubt that such a claim may be filed and allowed without a revivor, and that the creditor will thereby acquire a right to receive his pro rata of all the assets of the estate real and personal. No doubt, also, if the decree of confirmation had been so worded as to have rendered a judgment in favor of the creditor against the personal representative in the ordinary form, that the judgment of this Court would have been merged therein." (Page 48.)

The same principle was recognized and applied in the Maryland case of Coombs v. Jordan, supra, wherein it was held that a petition filed in equity in a creditor's suit by a judgment plaintiff against the representatives of the deceased debtor, is equivalent to suing out a scire facias to revive the same, for the purpose of giving him the full benefit of his lien in obtaining priority in satisfaction.

In the present case, the heir and the personal representative of the deceased judgment debtor, Mrs. Susie M. Stribling, have had their day in Court, and an opportunity to show cause, if any they had, why said Florida judgment was not a valid and unsatisfied debt against the estate of said judgment debtor; and, on the record, complainants were entitled to a judgment below against the personal representative of Mrs. Stribling for the amount of said Florida judgment, with interest and costs. The Florida judgment would have been merged in such new judgment.

The next question for disposition is, whether or not the Chancellor erred when he gave the jury peremptory instructions to answer the first issue in the negative.

The trial of issues of fact by a jury in the Chancery Court "shall be conducted like other jury trials at law, the finding of the jury having the same force and effect, and the Court having the same power and control over the finding, as on such trials at law." Shan. Code, sec. 6286.

It follows that the right of the Chancellor to direct a verdict upon the issues must be tested by the rules applicable to directed verdicts at law, and in such cases it is a well settled rule that the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence. Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn., 551, 556, 249 S. W., 984, and other cases there cited.

"A motion for peremptory instructions is not one which addresses itself to the discretion of the Court, but one which presents a question of law." Norman v. Railroad, 119 Tenn., 401, 422, 104 S. W., 1088.

An examination of the evidence in the record has led us to a different conclusion from that entertained by the learned and able Chancellor, as indicated by his direction to the jury to answer the first issue in the negative, which was equivalent to a peremptory instruction to the jury to find that the sale and transfer of the land described in complainants' bill, made by defendant Susie M. Stribling to her co-defendant R. A. Jackson, was not made for the purpose of hindering, delaying and defeating the complainants in the collection of the indebtedness of defendant Susie M. Stribling to the complainants, and which instruction the Chancellor had no power to give if there was any material evidence reasonably tending to support a contrary finding.

We are of the opinion that the testimony of the witness A. R. Carver was sufficient to take the case to the jury for a finding upon the first issue, when Carver's testimony is considered in connection with other facts disclosed by the record, as follows: (1) The close relationship of Mrs. Stribling and R. A. Jackson (27. C. J., p. 791, sec. 717) ; (2) the imminency of the maturity of the note held by complainants against Mrs. Stribling—the first of the two deeds to R. A. Jackson having been made by Mrs. Stribling one day before the note matured; and (3) the pendency of complainants' action against Mrs. Stribling in the Florida Court at the time the second of the two deeds was made.

The complainants were represented in their Florida lawsuit against Mrs. Stribling by the firm of Peterson & Carver, lawyers residing and practicing at Lakeland, Florida, and the witness A. R. Carver was a member of that firm. We quote questions and answers from the deposition of A. R. Carver as follows:

"Q. Mr. Carver, I hand you the files in a case brought by Alice L. Anderson and J. G. Anderson against Susie M. Stribling and R. A. Jackson brought in the Chancery Court of Humphreys County, Tennessee; attached to the files are certified copies of deeds executed by Susie M. Stribling to R. A. Jackson, recorded

in Book 43, page 578 and Book 43, page 370 of the Register's Office at Waverly, Tennessee. Please state whether or not Mrs. Stribling or R. A. Jackson ever talked to you about these deeds. A. Yes, I had a talk with R. A. Jackson, who resided near Lakeland, in the Spring or early Summer of 1928. I approached Mr. Jackson, after learning that he was the grantee named in these deeds, for the purpose of finding out, if possible, what consideration, if any, he paid for these conveyances and Mr. Jackson, as I recall it, did not state definitely as to a consideration, but stated that he had no control over the property described in the deeds and that any information I desired to obtain would have to be obtained from Mrs. Susie Stribling.

"Mr. Jackson told me at another time in a telephone conversation, when he called me in response to a letter I wrote him on April 6, 1928, that he did not own any property in Tennessee and that the property described, which is the property described in the deed recorded on March 28, 1927, belongs to Mrs. Susie M. Stribling. Mr. Jackson indicated to me both in the telephone conversation and in our personal conference that he knew nothing of any conveyance having been made to him.

"Q. Have you ever talked to Mrs. Stribling about these deeds? A. No."

When it is remembered that the first of the two deeds in question bears date of February 1, 1927, was acknowledged on March 19, 1927, and registered in the Register's Office of Humphreys County, Tennessee, on March 28, 1927, and that the second of the two deeds was executed and acknowledged on September 21, 1927, and registered in Humphreys County on September 23, 1927, the statements of defendant Jackson to the witness Carver in the Spring or Summer of 1928 that he (Jackson) "had no control over the property described in the deeds," and that any information Carver desired to obtain "would have to be obtained from Mrs. Susie Stribling," and that he did not own any property in Tennessee, were quite significant, and tended strongly to cast suspicion upon the good faith of the defendants in the transactions here under investigation. Carter v. Baker, 10 Heisk., 640.

We think the evidence to which we have referred was sufficient to cast upon the defendants the burden of rebutting the testimony tending to place the deeds under suspicion or of explaining the suspicious circumstances disclosed by such evidence. Bank v. Dunn, 10 Tenn. App. R., 95, 103; 27 C. J., p. 494, sec. 148, and p. 803, sec. 733.

"The nature, amount and source of the consideration supporting a conveyance of property are peculiarly within the knowledge of the parties to the conveyance." James v. Joseph, 156 Tenn., 417, 424, 1 S. W. (2d), 1017.

It is insisted for defendants that the testimony of Carver is so far weakened by cross-examination that it should not be believed. In the brief for defendants it is said: "The only thing complainants introduce which in any way reflects upon the integrity of these transfers is the evidence of their witness Carver which is, as heretofore stated, weak, unreliable, indefinite and unbelievable and is not sufficient to place these transfers under that great suspicion of fraud required in their tenth Tennessee appeal case so as to make it incumbent on the defendant Jackson to make any explanation about the transfers. Mrs. Stribling, being dead, could make none."

But the argument just quoted overlooks the rule that the credibility of a witness is for the jury to determine, and if he has given substantial testimony bearing on the issue, to which the jury might in the proper exercise of its function give credit, it is error for the Court to direct a verdict in opposition to it on the ground that the witness is unworthy of belief. Waters v. Davis, 145 Fed., 912; Nashville, etc., Railway Co. v. Norman, 108 Tenn., 324, 67 S. W., 479; Kinney v. Yazoo & M. V. R. Co., 116 Tenn., 450, 92 S. W., 1116; Citizens Street Railway Co. v. Howard, 102 Tenn., 474, 52 S. W., 864; Sills v. Lathan, 3 Hig., 141, 145.

In Sills v. Lathan, supra, the Court said:

"There seems to be a misconception of the practice prevailing in this State. At no time does a trial Judge preceding action on a motion for a new trial have the right to pass upon the credibility of witnesses. If any witness whose testimony is not inherently incredible or absurd makes out a case set forth in the declaration, the issues must be submitted to the jury, although the trial Judge may be of the opinion that the witness is not entitled to any credence whatever. So in the instant case, it was not for the learned trial Judge to intercept the case before it reached the triers of fact because he did not believe plaintiff's story.

"We do not undertake to prejudge or forejudge the plaintiff's case. It may not be worth her while to have the matters passed upon by a jury of her County. We simply hold that she has the right to submit her contentions to the jury and that the Court was in error in not so doing."

It results that the third assignment of error is sustained.

The remaining assignment of error (the fourth) is that the Chancellor erred "in refusing and declining to allow complainants to read to the jury the certified transcript of the Court proceedings in the Circuit Court of Polk County, Florida, which is Exhibit 'A' to the bill and Exhibit 1 to the deposition of J. D. Raulerson."

It is said in support of the fourth assignment that, "this was error because such copy was properly certified according to the Act of Congress and was admissible evidence."

The record shows that a certified transcript of the Court proceedings in the Circuit Court of Polk County, Florida, was filed as an exhibit to complainants' bill, and also filed as an exhibit to the deposition of J. D. Raulerson, and that complainants offered to read said transcript to the jury, whereupon the Chancellor stated that it "need not be read to the jury, but could be read to the Court later, to which action of the Court the complainants excepted."

The fact that complainants had obtained a judgment against Mrs. Stribling in the Florida Court in February, 1928, as alleged in the bill, appeared in evidence before the jury, and there was no evidence to the contrary. It was for the Chancellor—not the jury—to say whether or not the aforesaid Florida transcript was properly certified. The complainants were not prejudiced by the refusal of the Chancellor to permit their counsel to read the transcript of the record in the Florida case to the jury, and the fourth assignment of error is overruled.

But for the error pointed out by the third assignment, the decree of the Chancery Court dismissing complainants' suit is reversed, the directed verdict is set aside, and the cause will be remanded to the Chancery Court of Humphreys County for further proceedings in harmony with the opinion of this Court.

The costs of the appeal will be adjudged against the complainants Alice L. Anderson and J. G. Anderson, and the costs accrued in the Chancery Court will await the final decree of that Court.

Crownover and DeWitt, JJ., concur.

## OPINION ON PETITION FOR A REHEARING AND FOR AN ADDITIONAL FINDING OF FACTS.

We are asked by the defendants to reconsider and reverse our holding that this suit may be maintained on the Florida judgment without a revivor in the Florida court. We have re-examined the question, but we are satisfied with our former holding and the petition for a rehearing is denied.

We are also asked to set out in full the cross-examination of complainants' witness Carver, and to find "that said Carver could not identify the defendant R. A. Jackson as the man with whom he talked about the case when said Carver attempted (in his examination in chief) to state certain statements that he, Carver, testified about having made to him."

We think the petition, insofar as it seeks the additional finding of facts above indicated, is based upon a misconception of the functions of this Court in jury cases. When the trial court peremptorily in-

structs the jury to return a verdict for one of the parties, as in the instant case, a question of law, and not a question of fact, is presented on appeal to this Court. Norman v. Railroad, 119 Tenn., 401, 422, 104 S. W., 1088.

In such case, it is not for the trial judge, or this Court, but for the jury, to determine whether or not any witness has been discredited by any of the invalidating modes recognized by law, including cross-examination. Frank v. Wright, 140 Tenn., 535, 542-543; Welch v. Young, 11 Tenn. App., 431, 440.

The cross-examination of the witness Carver, if copied into our opinion, would be surplusage, for, if a petition for certiorari is filed to obtain a review of our judgment, the Supreme Court will examine all the evidence in the record in order to ascertain whether there is any material evidence supporting the rights of the parties against whom the motion is made. ''Where there is no controversy as to any material fact there is nothing for the jury to find; the question is then solely one of law for the Court, and in such a case the Court may instruct the jury to return a verdict in accordance with his view of the law applicable to such ascertained or uncontroverted facts. There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issues to be tried.'' Tyrus v. Railroad, 114 Tenn., 579, 593, 86 S. W., 1074; Railroad v. Morgan, 132 Tenn., 1, 5, 175 S. W., 1148; Southern Ice Co. v. Black, 136 Tenn., 391, 401, 189 S. W., 861; Brenizer v. N. C. & St. L. Railway, 156 Tenn., 479, 483, 3 S. W. (2d), 1053, 8 S. W. (2d), 1099; Stanley Bird Motor Co. v. Alley, 1 Tenn. App., 202, 206; Mayor & City Council v. Reese, 138 Tenn., 471, 479, 197 S. W., 492; Hines v. Partridge, 144 Tenn., 219, 232, 231 S. W., 16; Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn., 551, 556, 249 S. W., 984; Wylie v. Green River Lumber Co., 8 Tenn. App., 373, 379; Williams v. Bass, 8 Tenn. App., 482, 489.

The petition is denied and dismissed at the cost of petitioners.
Crownover and DeWitt, JJ., concur.